IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel. HAROLD SALOMON,** | * * * * | |
| Plaintiff, | * * | Civil Case No. RWT-06-1970 |
| v. | * * | |
| **DERISH M. WOLFF,** | * * | |
| Defendant. | * * * | |

# MEMORANDUM OPINION

On July 31, 2006, relator Harold Salomon ("Relator") filed a complaint in the District of Maryland against corporate defendants including the Louis Berger Group, Inc. ("LBG"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. ECF No. 2. Relator filed an amended complaint ("Amended Complaint") on July 10, 2009, adding three additional individual defendants, including Derish M. Wolff ("Wolff") and Salvatore J. Pepe ("Pepe"). ECF No. 18. On November 5, 2010, Relator, LBG, and the United States of America ("Government") signed an agreement settling the claims against LBG and providing for LBG's dismissal from the case.

On July 28, 2016, the Government filed a Complaint in Intervention ("Complaint in Intervention") against Wolff and Pepe only. ECF No. 83. On December 2, 2016, Wolff filed a Motion to Dismiss for Improper Venue Or, in the Alternative, to Transfer Venue to New Jersey [ECF No. 105], arguing that venue in Maryland was not proper when the Government filed its Complaint in Intervention in 2016 and that venue more appropriately lies in the District of New Jersey. Both parties also filed motions for leave to file sur-replies. ECF Nos. 113, 121. This

Court held a hearing on the motions on July 7, 2017. For the reasons that follow, Wolff's motion will be granted in part and the case will be transferred to the United States District Court for the District of New Jersey.

## BACKGROUND

Relator's Amended Complaint alleged that Defendants knowingly defrauded the United States by "tens of millions of dollars," through manipulation of overhead cost data and overhead rate proposals relating to contracts for domestic and international construction, engineering, and environmental projects. ECF No. 18 ¶ 3. It stated that venue was proper in the District of Maryland "pursuant to 31 U.S.C. § 3732(a) because LBG transacts business in, and acts proscribed by 31 U.S.C. § 3729 were committed in, the District of Maryland." *Id.* ¶ 36.

On November 5, 2010, Relator, LBG, and the United States of America signed an Agreement settling the claims against LBG. ECF No. 105-3. The agreement stipulated that all further claims between the parties to the agreement would fall under "the exclusive jurisdiction and venue" of the United States District Court for the District of Maryland. *Id.* ¶ 15.

Also on November 5, 2010, in the District of New Jersey, Pepe pled guilty to conspiracy to defraud the United States. ECF No. 83 ¶ 26. On December 12, 2014, in the District of New Jersey, Wolff also pled guilty to conspiracy to defraud the United States. *Id.* ¶ 23. The criminal charges against both Wolff and Pepe are related to the conduct at issue in the Government's Complaint in Intervention. ECF No. 105 at 6.

In its Complaint in Intervention against Wolff and Pepe only, the Government alleged an "East Orange [New Jersey] Office Costs Scheme" and a "Washington, D.C. Office Costs Scheme," pursuant to which Defendants Wolff and Pepe allegedly committed FCA violations while working at LBG's corporate headquarters in East Orange, New Jersey.

ECF No. 83 ¶¶ 82-93.  On May 22, 2017, this Court entered an Order dismissing with prejudice all claims against Pepe, thus leaving only the claims against Wolff remaining.  ECF No. 119.

## DISCUSSION

**I.   Wolff's Motion to Dismiss for Improper Venue Or, in the Alternative, to Transfer Venue to New Jersey [ECF No. 105]**

    **a.   Legal Standards**

The FCA provides that venue for any action brought under § 3730 is proper in any judicial district in which "any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."  31 U.S.C. § 3732(a).

A district court may, for the "convenience of parties and witnesses, and in the interest of justice," transfer a civil case to any other district or division where it might have been brought originally.  *See* 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

A district court has discretion to decide motions to transfer based on "an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The party seeking transfer must establish by a preponderance of the evidence that the transfer will "better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."  *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002) (citations and quotation marks omitted).  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil v. Gilbert*,

330 U.S. 501, 508 (1946)). Four factors guide the Court's evaluation of whether transfer is appropriate: "(1) the weight accorded to the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994).

### b. The relevant factors favor transfer to the District of New Jersey.

Because the alleged wrongdoing occurred at LBG corporate headquarters in New Jersey, the case could have been brought originally in New Jersey under 31 U.S.C. § 3732(a). The parties dispute whether venue is proper in Maryland in the first instance. This dispute turns on whether this action commenced when Relator filed his Amended Complaint in 2009 or when the Government filed its Complaint in Intervention in 2016. The Government argues that, in 2009, at least one defendant—LBG—transacted business in Maryland, and its subsequent dismissal from the action does not render venue improper. ECF No. 108 at 6-9. Wolff argues that venue should be evaluated with regard to the circumstances that existed in 2016 when the Government filed its Complaint in Intervention, at which time neither Pepe nor Wolff transacted business in Maryland and none of the alleged proscribed acts occurred in Maryland. ECF No. 105 at 9-14. This appears to be a question of first impression.

The Court need not decide this interesting question of first impression, however, because it concludes that the relevant factors favor transfer of the case to the District of New Jersey. *See* 28 U.S.C. § 1404(a).

### i. The Weight Accorded to the Plaintiff's Choice of Venue

Though a plaintiff's choice of forum is ordinarily granted significant deference, a lowered amount of deference is appropriate when "'none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in

4

controversy.'" *Dicken*, 862 F. Supp. at 92-93 (quoting *Mims v. Proctor & Gamble Distrib. Co.*, 257 F. Supp. 648, 657 (D.S.C.1966)).  The deference to a plaintiff's choice is also lower when a plaintiff chooses to bring suit in a foreign forum as opposed to his or her home jurisdiction. *Tse v. Apple Computer, Inc.*, Civ. No. L-05-2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006).  If the plaintiff is a government agency, the deference to the plaintiff's choice is diminished further. *E.E.O.C. v. FedEx Ground Package Sys., Inc.*, No. CIV.A. WMN-14-3081, 2015 WL 790500, at *1 (D. Md. Feb. 24, 2015) (citations omitted) (finding that, while plaintiff's choice of forum does not weigh as heavily when the plaintiff is a government agency, the choice is still "entitled to some deference"); *see also United States ex rel. Thomas v. Duke Univ.*, No. 4:13-cv-17, 2017 WL 1169734, at *3 (W.D. Va. Mar. 28, 2017) (noting that at "least one district court from the Fourth Circuit has held that [the] deference [given to a plaintiff's choice of forum] is even more limited in a *qui tam* action where the real party in interest is the United States") (citing *United States ex rel. Howard v. Harper Constr. Co.*, No. 7:12-cv-215-BO, 2015 WL 9463103, at *2 (E.D.N.C. Dec. 28, 2015)).

Because the Plaintiff is a government agency, and this is a *qui tam* action, the Government's choice of forum is entitled to lesser deference than what would usually be given to the plaintiff's choice.  Moreover, the Government here accepted Relator's choice of forum. ECF No. 108 at 12.  Relator was a citizen of New Mexico when he filed the Amended Complaint, ECF No. 18 ¶ 11, and a citizen of Florida when the Government filed the Complaint in Intervention, ECF No. 83 ¶ 14.  At no point was Relator a citizen of Maryland.

Additionally, it appears that none of the conduct complained of occurred in the District of Maryland and thus this forum has little connection with the matter in controversy, so the Government's choice of forum is entitled to even lesser deference.  By contrast, the Complaint in

5

Intervention specifically alleges an "East Orange Office Costs Scheme," *see* ECF No. 83 ¶¶ 82-89, which relates to allegedly proscribed acts taken at LBG's East Orange corporate headquarters in New Jersey. *See* ECF No. 105 at 16 ("The very business records of the Company upon which the Government will rest its case are in New Jersey.").

Because the Government is the Plaintiff and chose its forum based on the forum selection of a foreign Relator, and because none of the specific wrongdoing alleged occurred in Maryland, the Government's choice of forum will be accorded minimal deference.

### ii. Witness Convenience and Access

This Court has noted that "motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 465 (D. Md. 2000). Convenience of the witnesses is "perhaps the most important factor to consider when analyzing a § 1404(a) motion to transfer venue." *Ralph v. Long*, Civ. No. 8:99-3281-DKC, 2001 WL 706034, at *3 (D. Md. June 14, 2001).

Wolff asserts that "[a]s many as thirty to forty substantive witnesses from LBG, most of whom live in New Jersey," were interviewed as part of the criminal investigation and are potential witnesses in this litigation. *See* ECF No. 105-1 ¶ 12 (Certification of Mark Rufolo). In his attorney's certification attached to his reply brief, Wolff asserts that "57 persons interviewed by federal agents and therefore, potential witnesses" live in New Jersey, compared with a total of twenty-eight witnesses whose residences were either outside of New Jersey or unclear. ECF No. 111-1 ¶ 7. Wolff does not provide any substantive information regarding the identity of the potential New Jersey witnesses or the relative importance of any witness's testimony. *Id.*

The Government identifies only three potential witnesses who live in Maryland, including LBG officials who likely have knowledge of the alleged scheme.  ECF No. 108 at 13.  The rest of the witnesses, the Government argues, reside in "New York, Virginia, Florida, North Carolina, South Carolina, Massachusetts, Vermont, and elsewhere."  *Id*.  However, the government does not provide any information on the probable number of any of these potential witnesses.  *Id.*  The Government is also silent about the number of potential witnesses who reside in New Jersey, arguing only that the certification by Wolff's counsel lacks a factual basis for the assertion that "most" of the "thirty to forty substantive witnesses from LBG" reside in New Jersey.  *See* ECF No. 108 at 13 n.7.

While the exact numbers are disputed, there have been only three witnesses identified who reside in Maryland, and the rest appear to reside in New Jersey or elsewhere. While Wolff has not identified with specificity which witnesses reside in New Jersey and their relative level of importance, many New Jersey witnesses were interviewed as part of the criminal investigation that took place in New Jersey.  Moreover, many of the alleged proscribed acts took place at the LBG office in New Jersey, and it is obvious that there are likely to be a number of key witnesses who reside in New Jersey.  Accordingly, the convenience of the witnesses favors transfer.

### iii.  Convenience of the Parties

The Court should consider the impact of transfer on both parties, but it is not appropriate to shift the burden of inconvenience from the defendant to the plaintiff.  *See Trustees of Nat'l Asbestos Workers Pension Fund and Med. Fund v. Lake Erie Insulation Co.*, 688 F. Supp. 1059, 1060 (D. Md. 1988); *see also Atlantic City Assocs. No. Two (S-1), LLC v. Reale*, No. CIV. CCB-11-78, 2011 WL 1769842, at *3 (D. Md. May 9, 2011) (finding transfer appropriate when travel to the original forum would cause hardship to the defendants but transfer would not cause

hardship to the plaintiffs other than the fact that "its records [were] maintained in the Baltimore office").

Though the Government contends that Maryland is more convenient to Wolff, a Florida resident, because Maryland is closer to Florida than New Jersey, ECF No. 108 at 14, Wolff is eighty-one years old and has a residence in New Jersey, ECF No. 111 at 20.  The fact that Wolff is requesting transfer further supports Wolff's belief that the District of New Jersey is more convenient to him.

Wolff's attorney claims to have "voluminous hard-copy documents and legal files, which occupy file cabinets at [his] office, as well as millions of pages of material on [his] internal electronic network system," which may relate to the case.  ECF No. 105-1 at ¶ 3.  Wolff also asserts that "the company records that are at issue were generated at [LBG's] headquarters in New Jersey," ECF No. 111 at 3, though it is unclear where those records are currently located.

The District of Maryland is generally more convenient to the Government because of the Southern Division's proximity to Washington, D.C.  ECF No. 108 at 14.  The Government agencies involved have their main offices in Washington, D.C., and 319 boxes of seized documents that may include evidence are located in Washington, D.C.  *Id.*

Nevertheless, Department of Justice attorneys from Washington, D.C. participated in the criminal investigation into this matter in the District of New Jersey, ECF No. 111 at 19, and made previous attempts to settle with Wolff at meetings in New Jersey, *id.* at 3.  This suggests that it would not be prohibitively inconvenient for the Government to pursue litigation in the District of New Jersey.  This factor, therefore, counsels slightly in favor of transfer.

### iv. The Interest of Justice

The interest of justice weighs strongly "when a party has previously litigated a case involving similar issues and facts before the transferee court." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 784 (D. Md. 2009). Choice of law, local interest, and other public factors may also be important. *See, e.g.*, *Atlantic City Assocs. No. Two (S-1), LLC*, 2011 WL 1769842, at *3 ("Also relevant is the local interest in having localized controversies decided at home.") (citing *King v. Navistar Int'l Trans. Corp.*, 709 F.Supp. 261, 262 (D.D.C.1989)).

In this case, a related criminal investigation has already concluded in New Jersey, ECF No. 111 at 19, and Pepe and Wolff have already pled guilty in the District of New Jersey to crimes related to the present matter, ECF No. 83 ¶¶ 23, 26. The familiarity of the District of New Jersey with both the underlying facts and the parties may be useful in resolving the civil litigation. ECF No. 105 at 22. This factor weighs in favor of transfer to the District of New Jersey.

### c. Conclusion

Regardless of whether venue was proper in the District of Maryland at the time that the Government filed its Complaint in Intervention, the four discretionary factors, considered together, favor transfer to the District of New Jersey under 28 U.S.C. § 1404(a). Therefore, Wolff's Motion to Dismiss for Improper Venue Or, in the Alternative, to Transfer Venue to New Jersey [ECF No. 105] will be granted in part and the case will be transferred to the District of New Jersey.

## II. Plaintiff's and Defendant's Motions for Leave to File Sur-Replies [ECF Nos. 113, 121]

Allowing a sur-reply is within the Court's discretion, but they are generally disfavored. *See E.E.O.C. v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013)*, aff'd in part*,

778 F.3d 463 (2015). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Id.* While the Court has not relied on either of the proposed sur-replies in reaching its conclusions, in the interest of allowing both parties to fully respond to the issues raised, the Government's Motion for Leave to File Sur-Reply [ECF No. 113] and Wolff's Motion for Leave to File a Response to the Government's Sur-Reply [ECF No. 121] will be granted.

## CONCLUSION

For the foregoing reasons, Wolff's Motion to Dismiss for Improper Venue Or, in the Alternative, to Transfer Venue to New Jersey [ECF No. 105] will be granted in part and the case will be transferred to the District of New Jersey. The Government's Motion for Leave to File Sur-Reply [ECF No. 113] and Wolff's Motion for Leave to File a Response to the Government's Sur-Reply [ECF No. 121] will be granted. A separate Order follows.

Date: July 24, 2017                                      /s/
                                              ROGER W. TITUS
                                              UNITED STATES DISTRICT JUDGE